**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| **CONGRUENT MEDIA RESOURCING LLC,**<br><br>                    Plaintiff,<br><br>    v.<br><br>**RAPID7, INC.,**<br><br>                    Defendant. | C.A. No. 7:26-cv-00155<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Congruent Media Resourcing LLC files this Original Complaint for Patent Infringement against Rapid7, Inc. and would respectfully show the Court as follows:

### I.  THE PARTIES

1.      Plaintiff Congruent Media Resourcing LLC ("Plaintiff") is a Texas limited liability company with a principal place of business located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

2.      On information and belief, Defendant Rapid7, Inc. ("Defendant") is a corporation organized and existing under the laws of Delaware with a place of business at 401 Congress Avenue, Suite 1900, Austin, Texas 78701. Defendant has a registered agent, C T Corporation System, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

### II.  JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

1

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Texas Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant maintains a place of business at 401 Congress Avenue, Suite 1900, Austin, Texas 78701.

5.      Without limitation, on information and belief, within this state and this District, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Texas and this District.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from services provided to persons or entities in Texas and this District. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its providing services within Texas and this District.  Defendant has committed such purposeful acts and/or transactions in Texas and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.      Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant maintains a place of business at 401 Congress Avenue, Suite 1900, Austin, Texas 78701.  On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7.       For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III.  UNITED STATES PATENT NO. 9,135,418

8.     Plaintiff incorporates the above paragraphs herein by reference.

9.     On September 15, 2015, United States Patent No. 9,135,418 ("the '418 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '418 Patent is titled "System and Method for Creating Secure Applications."  A true and correct copy of the '418 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10.    Congruent Media Resourcing LLC is the assignee of all right, title, and interest in the '418 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '418 Patent.  Accordingly, Congruent Media Resourcing LLC possesses the exclusive right and standing to prosecute the present action for infringement of the '418 Patent by Defendant.

11.    The invention in the '418 Patent relates to systems and methods for creating secure workspaces and applications, including the management and enhancement of same.  (Ex. 1 at 1:16-19).  The goal of the '418 Patent is to reduce security breaches by creating secure workspaces and applications.  (*Id.* at 1:16-38).  To do this, the '418 Patent discloses imposing one or more intercepts that convert an unsecured target application to a secure application.  (*Id.* at 1:54-57).  An intercept may be considered as an actual replacement of existing instruction or a new instruction that may interrupt program flow and conditionally return control to the program flow.  (*Id.* at 1:66-2:3).  By adding an intercept, the behavior of the secure application can be different from the original behavior of the target application.  (*Id.* at 1:57-61).

12.    The '418 Patent further explains that when the intercept is added to the targeted application, the now secure application can be repackaged with the bound intercepts integrated with the original file.  (*Id.* at 2:4-6).  As a result of the repackaging, the intercepts may be physically inseparable from the original files following the repackaging of the secure application, which can

3

result in an immutable deployable entity. (*Id.* at 2:7-10). This feature can prevent the secure application from having the intercepts removed by an authorized party. (*Id.* at 2:10-11).

13.     In addition, generating the secure application can preserve the operating system interactions that were originally defined for the target application and the operating system for which the target application was designed. (*Id.* at 2:11-15). Preserving the operating system interactions can ensure that the secure application, even with the modifications to secure it, will continue to work with its intended operating system and that original behavior that was designed into the target application may still be permitted to be performed with the secure application in keeping with the scope of any acquired policy enforcement mechanism. (*Id.* at 2:15-21).

14.     The '418 patent provides details regarding how application securitization occurs. Specifically, it discloses that one way application wrapping may occur is via an automated process in which no source code is modified, thereby reducing programmer oversight and errors. (*Id.* at 12:19-26). Additionally, the '418 patent provides examples of this, including 1) replacing references to system services with references to a library that applies the necessary mechanisms and policies and 2) inserting secure references into the code of an application to replace non secure references. (*Id.* at 12:24-35). Specifically, this securitization process may include interposing system API calls to allow a secure framework to intercept and control application functions. (*Id.* at 21:43-49). This process may further include encryption for additional protection of applications. (*Id.* at 21:49-58). One major benefit may be that management layers may be injected onto the compiled applications, removing the need for source code or developer implemented application changes. (*Id.* at 12:36-47).

15.     The '418 patent also discloses technical examples of the use of securing applications via an intercept. One example method is called byte code injection, which replacing

byte code API calls with intercepts. (*Id.* at 22:45-51). This is particularly useful for applications formatted for the Android operating system. (*Id.*; *also* Figure 11; 23:45-60). Another disclosed technical method is to link replacement calls for native object code. (*Id.* at 22:51-57). This method is useful for applications that use native code and do not run under a virtual machine. (*Id.*). An example of this type of injection is link injection, which replaces preexisting system calls or the inclusion of new instructions in an immutable entity. (*Id.* at 24:64-25:24). The '418 Patent further discloses that linking order may be statically or dynamically linked, and that priority can be established during runtime. (*Id.* at 25:6-17). Finally, a system of obfuscation may prevent further modification or reversal of the securitization process. (*Id.* at 25:15-17).

16.    The '418 patent further discusses the technical benefits of repackaging the target application during a reconstruction phase. (*Id.* at 24:3-21). This is performed by a repackager. (*Id.* at 3-7). The repackager may be made of software or hardware elements and may be further modified by secure object references injected before. (*Id.* at 24:7-9). In addition, this reconstructed and modified application may need a new certificate to be trusted. (*Id.* at 24:11-16).

## **Asserted Claim**

17.    Claim 9 of the '418 Patent claims:

A method of generating a secure application, comprising:

via a processor:

receiving a target application that is designed to interact with an operating system;

configuring the target application by imposing one or more intercepts on the target application, wherein the imposition of the intercepts converts the target application into a secure application that maintains the interaction with the operating system; and

repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable from the secure application.

### IV.  COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,135,418)

18.     Upon information and belief, Defendant has directly infringed claim 9 of the '418 Patent in Texas, in this District, and elsewhere in the United States, by using and performing the claimed method by using the Rapid7 tCell("Accused Instrumentality").

19.     **Direct Infringement**. As explained below, Rapid7 tCell performs a method of generating a secure application.  Rapid7 tCell leverages Runtime Application Self-Protection ("RASP") technology to protect applications. Rapid7 tCell is an application monitoring and protection solution that combines WAF and RASP capabilities.  It protects web apps against active threats.

**Boston, MA — October 15, 2018**

Rapid7, Inc. (NASDAQ: RPD), powering SecOps through its visibility, analytics and automation cloud, today announced it acquired tCell.io, Inc., a leading provider of web application threat defense and monitoring. Through this acquisition, Rapid7 plans to expand its application security capabilities and help its customers better assess, monitor, and protect against application-based attacks.

tCell's runtime application self-protection (RASP) and web application monitoring is expected to extend the capabilities of Rapid7's Insight Platform by enhancing web application security at every level—from browser to server—helping organizations identify and block attacks. tCell was recognized as a strong performer in The Forrester New Wave™: Runtime Application Self-Protection, Q1 2018.

Rapid7's Insight Platform delivers a unique combination of network visibility, security analytics, and orchestrated automation used by organizations to manage risk, detect and stop attacks, and orchestrate security operations across their modern networks. In addition to web application security, Rapid7's Insight capabilities include complete vulnerability management, security information and event management (SIEM), user behavior analytics (UBA), and security orchestration and automation (SOAR).

(*E.g.*,   https://www.rapid7.com/about/press-releases/rapid7-acquires-web-application-security-provider-tcell/).



# Rapid7 application security solutions

Rapid7 offers application security solutions to cover every need:

- **InsightAppSec**: It gets you up and running quickly so you can secure the modern web. With no on-premises component installation necessary to scan external apps, your team will be scanning for vulnerabilities with InsightAppSec's intuitive workflows within minutes. Internal apps are also supported with the installation of a lightweight on-premise engine.
- **Managed Application Security**: Leverage your security program investment; our managed service offering allows you to offload the entire process to our team of application security experts. This minimizes your workload, reduces your time to productivity, guarantees a consistent application assessment process, and frees you up for other tasks (because we know there's always more to do). Additionally, our experts remove any false positives, so you don't have to. Even better, this offering includes add-on services such as vulnerability validation and business logic testing.
- **tCell by Rapid7**: Our application monitoring and protection solution combines WAF and RASP capabilities so you can assess your application attack surface, monitor attacks in progress, and protect your web apps against active threats.
- **Docker and Container Security**: Learn how Rapid7 solutions can help you assess, secure, and monitor all layers of your containerized application infrastructure.

generating a secure application

(*E.g.*, https://www.rapid7.com/solutions/application-security/).

insightVM | insightAppSec | TCELL
BY RAPID7

**Web Applications**

insightVM
**Cloud and Virtual Environments**

insightVM
**Traditional Vulnerability Management**

Solutions also available as managed services.

(*E.g.*, https://www.rapid7.com/solutions/application-security/).

7

20.    Rapid7 tCell performs the step of receiving a target application that is designed to interact with an operating system.  Rapid7 tCell receives a target application.



(https://www.rapid7.com/solutions/application-security/).

21.    Rapid7 tCell performs the step of configuring the target application by imposing one or more intercepts on the target application, wherein the imposition of the intercepts converts the target application into a secure application that maintains the interaction with the operating system.  Rapid7 tCell provides a system that imposes intercepts on the target application.  For example, as shown below, this occurs during runtime. Upon information and belief, Rapid7 tCell imposes intercepts to monitor applications.  Rapid7 tCell's solutions live in the runtime environment and are integrated within the applications themselves.  This allows tCell to provide the listed "Key RASP Benefits," shown below. tCell employs several agents, including web server, app server, and browser level agents in order to automatically report on changes in an application's attack surface.  Specifically, tCell's agents run as part of a user's servers, not as a separate process.

Upon information and belief, this converts a target application into a secure application that maintains interaction with an operating system.  Rapid7 tCell's documentation states that this allows for integration into existing workflows. Rapid7 explains that the tCell Agent is integrated with the web applications in order to block malicious requests.  The tCell Agent sends data to the Insight Platform using a "revocable API key over TLS." Rapid7 explicitly distinguishes tCell's runtime capabilities from traditional, server-side WAFs. By guarding file access "at the code level," Rapid7 concedes that the tCell agent is not merely monitoring perimeter HTTP traffic on a server. Rather, the agent must be injected into the application's runtime environment (*e.g.*, the JVM or CLR) to intercept the application's internal file I/O operations from within. This in-memory instrumentation repackages the secure application such that tCell's monitoring intercepts become structurally integrated into the application's internal execution path, rendering them inseparable from the application process during its lifecycle.



(*E.g.*, https://www.rapid7.com/fundamentals/runtime-application-self-protection/).

imposing one or more intercepts

## 3. Carefully test your RASP solution prior to implementation

Because RASP integrates so closely with the applications it monitors, it can sometimes cause performance issues. If these issues are significant enough to have an impact on the users, they may complain about the change in performance. For this reason, it's wise to carefully test your RASP solution to make sure you understand how it affects application performance before implementing it within your environment.

With attackers increasingly targeting applications, it's essential for businesses to adopt comprehensive, multi-layered application security strategies that safeguard customer data. RASP empowers companies to embed stronger application security checks directly within applications while they are in production, accurately detecting and blocking potential attacks in real time. For this reason, RASP can be a valuable part of an organization's application security toolkit.

(*E.g.*, https://www.rapid7.com/fundamentals/runtime-application-self-protection/).

RASP solutions live in the runtime environment, analyzing both requested app behavior and context to deliver continuous security oversight. The "self-protection" aspect of RASP tools allows them to automatically defend against specific attacks without human intervention.

**Key RASP Benefits**

RASP provides a way to layer security onto the runtime process of applications themselves, effectively granting software inside-out protection by detecting potentially malicious requests and taking immediate action, including:

imposing one or more intercepts

- *User warnings* — Risky requests may be made by legitimate users with no ill intent; these warnings serve as education about the reason for request denial.
- *Direct reporting* — For more serious issues, RASP can be configured to alert IT security professionals who can investigate further.
- *App termination* — Well-designed RASP security tools terminate offending apps without impacting other processes.
- *Broad-spectrum protection* — RASP offers broad-spectrum, automatic protection against common threats. In addition, RASP tools are easy to deploy, and work with all common app protocols such as HTTP, HTTPS, JSON, REST, Simple Object Access Protocol and Ajax.

(*E.g.*, https://www.rapid7.com/blog/post/2018/07/24/beyond-rasp-security/).

10

**Complete application visibility at the speed of DevOps**

**With tCell, you can:**

- Deploy web server, app server, and browser-level agents in minutes to get complete coverage
- Automatically report on changes in your application attack surface, including API endpoints
- Watch for XSS and clickjacking at the browser level

With a web server, app server, and browser-level agent, tCell is able to see deeply into your applications at multiple levels and provide defense in depth. tCell also focuses on enabling security at the speed of DevOps and integrates into your already-existing CI/CD workflows. tCell's agents run as a part of your servers—not in a separate process. This means that these agents are continuously monitoring for any abnormal behavior or other concerning activities.

imposing one or more intercepts. . . wherein the imposition of the intercepts converts the target application into a secure application

(*E.g.*,     https://www.rapid7.com/globalassets/_pdfs/product-and-service-briefs/rapid7-product-brief-tcell-by-rapid7.pdf).

intercepts are integrated with the secure application

**tCell Agent**

The tCell Agent integrates with your web application and web server code to monitor all incoming requests and block malicious requests that can attack your application. The agent sends data to the Insight Platform using a revocable API key over TLS.

**Cloud Collection and Integrations**

Rapid7 collects some data directly via a connection with the Insight cloud. The Insight cloud can connect to third parties on your behalf, such as container registries for InsightVM.

You can also send data directly to us via our APIs or with one of our software libraries or extensions, such as the InsightOps application logging libraries.

(*E.g.*,  https://www.rapid7.com/globalassets/_content-track-items/content-track-items---is/rapid7-insight-cloud-security-whitepaper---2020.pdf).

11

## Going deeper: WAFs need RASP

Effectively stopping known and unknown vulnerabilities requires deeper protection. This is where RASP comes in. RASP techniques focus on surgical choke points that are data-driven, highly effective against bypass, and secured by intuitive policies.

In the case of tCell by Rapid7, in addition to WAF capabilities, the solution guards the file access at the code level, looking for any code that is reading and writing local files. The protection policy is derived from data collected on read/write operations by the application. When the policy is set, tCell then validates file operations conform to the policy. When violations of the policy occur, events with details of each violation are sent to the cloud for analysis and reporting, where incident response can be alerted within seconds of a breach. Further, the instrumentation can be configured to be "failed close" as opposed to "fail open," which means the attacker is thwarted immediately.

Despite having the vulnerability in the code, the attacker's attempt at exploiting it fails.

(*E.g.*, https://www.rapid7.com/blog/post/2019/08/12/how-to-protect-the-file-system-from-your-app-with-wafs-and-rasp/).

22.     Rapid7 tCell performs the step of repackaging the secure application such that the intercepts are integrated with the secure application and are inseparable from the secure application. Rapid7 tCell repackages the secure application by wrapping the entire application stack. Rapid7 tCell explains that the tCell Agent is integrated with the web applications in order to block malicious requests. The tCell Agent sends data to the Insight Platform using a "revocable API key over TLS."

## Complete application visibility at the speed of DevOps

With tCell, you can:

- Deploy web server, app server, and browser-level agents in minutes to get complete coverage
- Automatically report on changes in your application attack surface, including API endpoints
- Watch for XSS and clickjacking at the browser level

With a web server, app server, and browser-level agent, tCell is able to see deeply into your applications at multiple levels and provide defense in depth. tCell also focuses on enabling security at the speed of DevOps and integrates into your already-existing CI/CD workflows. tCell's agents run as a part of your servers—not in a separate process. This means that these agents are continuously monitoring for any abnormal behavior or other concerning activities.

intercepts are integrated with the secure application and are inseparable from the secure application

12

(*E.g.*,    https://www.rapid7.com/globalassets/_pdfs/product-and-service-briefs/rapid7-product-brief-tcell-by-rapid7.pdf).

intercepts are integrated with the secure application

**tCell Agent**

The tCell Agent integrates with your web application and web server code to monitor all incoming requests and block malicious requests that can attack your application. The agent sends data to the Insight Platform using a revocable API key over TLS.

**Cloud Collection and Integrations**

Rapid7 collects some data directly via a connection with the Insight cloud. The Insight cloud can connect to third parties on your behalf, such as container registries for InsightVM.

You can also send data directly to us via our APIs or with one of our software libraries or extensions, such as the InsightOps application logging libraries.

(*E.g.*,  https://www.rapid7.com/globalassets/_content-track-items/content-track-items---is/rapid7-insight-cloud-security-whitepaper---2020.pdf).

23.     **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of claim 9 of the '418 Patent in the State of Texas, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the Accused Instrumentality to its customers for use in a manner that Defendant knew infringed claim 9 of the '418 Patent. For example, Defendant provided marketing material and advertising that the Accused Instrumentality performs the claimed method of generating a secure application from a target application designed to interact with an operating system as claimed in claim 9 of the '418 Patent.  (*Supra* ¶¶19-22 (identifying marketing materials)).

24.     On information and belief, since Defendant became aware of the '418 patent and the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the Accused Instrumentality to its customers and by aiding and abetting its use as demonstrated by the marketing materials in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the Accused Instrumentality, Defendant knew that the use of the Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continues to encourage and induce its customers to use the Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through instructional materials, support, and user's guides. Exemplary materials are cited above. (*Supra* ¶¶19-22 (identifying marketing materials)). Defendant therefore knowingly induced infringement and specifically intended to encourage and induce the infringement of the '418 Patent by its customers.

25.     On information and belief, since Defendant became aware of the infringement at least as of the date of the service of the original Complaint, Defendant is and has been committing the act of contributory infringement by intending to provide the identified Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the '418 Patent, and further knowing that the accused use of the Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the Accused Instrumentality by Defendant's customers in the manner described above yet continued to provide the Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶19-22 (identifying

14

marketing materials)). As described above, since learning of the infringement, Defendant knew that the use and implementation of the Accused Instrumentality by its customers was made and adapted for infringement of the '418 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the Accused Instrumentality in the manner described above. After Defendant became aware that the use of the Accused Instrumentality infringes at least claim 9 of the '418 Patent, Defendant knew that each such new use was made and adapted for infringement of claim 9 of the '418 Patent and Defendant continued to advertise and provide the Accused Instrumentality for such infringing activities. (*Supra* ¶¶19-22 (identifying marketing materials)). Furthermore, as described more fully above, the Accused Instrumentality has functionality designed to perform the steps in the manner described above and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use. (*Id.*).

26.     Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '418 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

27.     Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '418 Patent, Plaintiff will be greatly and irreparably harmed.

28.     Plaintiff is only asserting a method claim and as such the marking requirements of 35 U.S.C. 287(a) do not apply. *Crown Packaging Technology, Inc. v. Rexam, Beverage Can Co.*, 559 F.3d 1308, 1316-1317 (Fed. Cir. 2009) ("Because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. 287(a) does not apply."); *Hanson v. Alpine*

15

*Valley Ski Area, Inc.*, 718 F.2d 1075, 1083 (Fed.Cir. 1983) ("It is 'settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method." (*Quoting Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983)). Plaintiff has therefore complied with the marking requirements 35 U.S.C. 287(a).

## V.  <u>JURY DEMAND</u>

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that claim 9 of United States Patent No. 9,135,418 has been infringed and is being infringed, either literally and/or under the doctrine of equivalents, directly and/or indirectly, by Defendant;

b. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c. That Defendants be preliminarily and permanently enjoined from any further activity or conduct that infringes;

d. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

April 17, 2026                                      Respectfully Submitted,

                                      /s/Steven G. Kalberg
                                      David R. Bennett (IL Bar No.: 6244214)
                                      Steven G. Kalberg (IL Bar No.: 6336131).

16

DIRECTION IP LAW
P.O. Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

*Counsel for Plaintiff*
*Congruent Media Resourcing LLC*

17